O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SEAN SULLIVAN,<br><br>                         Plaintiff,<br><br>       v.<br><br><br>ASHLEY FURNITURE INDUSTRIES, INC.,<br>et al.,<br><br>                     Defendants. | Case No.:  5:21-cv-01053-MEMF-SPx<br><br>**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT [ECF NO. 32]** |

Before the Court is the Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, filed by Defendant Ashley Furniture Industries, Inc. ECF No. 32. For the reasons stated herein, the Court hereby GRANTS IN PART the Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

/ / /

/ / /

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**   **Background**

    **A.  Factual Background[1]**

       Plaintiff Sean Sullivan was employed by Defendant Ashley Furniture Industries, Inc. ("AFI"). DSUF ¶ 11. On March 6, 2020, Sullivan suffered a disability requiring medical attention and accommodation. PSAF ¶ 49. Over the following weeks, Sullivan contacted AFI's attendance line multiple times to inform AFI that he would be absent and that he had a doctor's note supporting his need for an absence. DSUF ¶¶ 18–19. On March 30, 2020, Sullivan again informed AFI via the attendance line that he would be out due to his disabling condition until further notice. PSAF ¶ 39. He did not return to work that day, nor did he provide AFI with copies of his doctor's note. DSUF ¶ 22. On April 8, 2020, AFI terminated Sullivan's employment for violating AFI's attendance policy, which prohibited absences of more than three consecutive days without notification. *Id.* ¶ 24.

    **B.  Procedural History**

       On April 22, 2021, Sullivan filed a complaint against Defendants AFI and Stoneledge Furniture LLC ("Stoneledge"), alleging: (1) disability discrimination under the Fair Employment and Housing Act ("FEHA"); (2) retaliation under FEHA; (3) failure to provide reasonable accommodation under FEHA; (4) failure to engage in the interactive process under FEHA; (5) aiding and abetting under FEHA; (6) wrongful termination in violation of public policy; and (7) waiting time penalties. ECF No. 1-1. On June 23, 2021, the case was removed to federal court. ECF No. 1. On July 7, 2022, AFI filed the instant Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. ECF No. 32 ("MSJ" or "Motion"). On August 9, 2022, the parties submitted a joint stipulation to dismiss Stoneledge, which the Court subsequently granted. ECF Nos. 41, 42. The Motion was fully briefed on September 22, 2022. ECF Nos. 43 ("Opposition" or "Opp'n"); 51 ("Reply"). Both parties submitted objections to evidence or documents filed in support of the Motion

---

[1] The facts set forth below are taken from the parties' prepared Statements of Uncontroverted Material Facts, ECF Nos. 33 ("Defendant's Statement of Uncontroverted Facts" or "DSUF"); 44, at 2 ("Plaintiff's Opposition to Defendant's SUF" or "PODSUF"); 44, at 13 ("Plaintiff's Statement of Additional Facts" or "PSAF"); 51, at 1 ("Defendant's Reply in Support of SUF" or "DRSUF"); 51, at 14 ("Defendant's Opposition to Plaintiff's SAF" or "DOPSAF"). To the extent that any statements of fact are omitted, the Court concludes they are not material to the disposition of this Motion.

or Opposition. ECF Nos. 49, 51-2, 51-3, 51-4. On September 22, 2022, AFI filed an Ex Parte Application to Shorten Time for Hearing on a Motion to Strike Declaration of Victor Castaneda. ECF No. 52. The Ex Parte Application was opposed. ECF No. 54. The Court held oral argument on the Ex Parte Application on September 27, 2022. On September 30, 2022, the Court denied the Ex Parte Application. ECF No. 56. The Court held oral argument on the Motion for Summary Judgment on October 6, 2022 after providing the parties with a tentative ruling in advance.

## II.   <u>Applicable Law</u>

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

Under Rule 56(a), a court also has authority to grant *partial* summary judgment, or "judgment on less than the entire case." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2737 (4th ed. 2022) (citing FED. R. CIV. P. 56(a)). Under Rule 56(g), a court that "does not grant all the relief requested by the motion . . . may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." FED. R. CIV. P. 56(g).

A court must view the facts and draw inferences in the manner most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Id.* To carry its

1    ultimate burden of persuasion on the motion, the moving party must demonstrate that there is no

2    genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

3         Where a moving party fails to carry its initial burden of production, the nonmoving party

4    has no obligation to produce anything, even if the nonmoving party would have the ultimate burden

5    of persuasion at trial. *Nissan Fire*, 210 F.3d at 1102–03. In such cases, the nonmoving party may

6    defeat the motion for summary judgment without producing anything. *Id.* at 1103. However, if a

7    moving party carries its burden of production, the burden shifts to the nonmoving party to produce

8    evidence showing a genuine dispute of material fact for trial. *Liberty Lobby*, 477 U.S. at 248–49. If

9    the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the

10   motion for summary judgment shall be granted. *Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c)

11   mandates the entry of summary judgment, after adequate time for discovery and upon motion,

12   against a party who fails to make a showing sufficient to establish the existence of an element

13   essential to that party's case, and on which that party will bear the burden of proof at trial.").

14        A party cannot create a genuine issue of material fact simply by making assertions in its

15   legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d

16   1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis

17   for the dispute. *See id.* "If a party fails to properly support an assertion of fact or fails to properly

18   address another party's assertion of fact . . . the court may . . . consider the fact undisputed." FED. R.

19   CIV. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only

20   required to consider evidence set forth in the moving and opposing papers and the portions of the

21   record cited therein. *Id.* 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir.

22   2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be

23   insufficient; there must be evidence on which the jury could reasonably find for [the opposing

24   party]." *Liberty Lobby*, 477 U.S. at 252.

25   **III.    Findings of Fact**

26        The Court finds that the following material facts are established for trial under FED. R. CIV.

27   P. 56(a) and FED. R. CIV. P. 56(g). AFI manufactures and distributes home furnishings and

28   accessories. DSUF ¶ 1. AFI is an equal opportunity employer which has written policies expressly

prohibiting discrimination and harassment on the basis of disability, and any other status protected by law. *Id.* ¶ 3.[2] AFI's written policies provide methods for employees to report discrimination to members of human resources or management and its policies expressly prohibit retaliation for reporting discrimination. *Id.* ¶ 4.[3] Sullivan began his employment at AFI on or about July 15, 2019, as a Distribution Center laborer in the Redlands warehouse. *Id.* ¶ 11. He received a copy of AFI's employee handbook, which contained these policies. *Id.* ¶ 5. Sullivan worked out of AFI's facilities and took direction from AFI supervisors. *Id.* ¶ 14. AFI handled Sullivan's employment documentation, disciplinary actions, and termination documentation. *Id.* The Company's attendance policy states as follows:

Disciplinary Procedure for Tardiness and Absenteeism

2. When an employee has a total of 6 unexcused absences within a 365-day period, **a written warning may occur**. When an employee has a total of 7 unexcused absences within a 365-day period, the **employee may receive a final written warning and/or be demoted and/or transferred**. **A total of 8 unexcused absences within a 365-day period, may result in the termination** of employment. . . .

3. With the exception of scheduled breaks, an **"unexcused absence,"** for purposes of this Policy, occurs when an **employee is absent** or is not at his/her work station ready to work during their regular or overtime shift, and the **absence has not been authorized or otherwise protected by applicable law**.

**Authorization of an absence** may occur if, for example:
. . .
b. The employee **has applied for a leave of absence that has been approved by the Human Resources Department.**

c. The employee has **provided acceptable medical documentation** that he/she was not able to work. It is the employee's obligation to **obtain and submit any medical documentation on the day they return to work**.

. . .

---

[2] Sullivan contends that this fact is "[d]isputed to the extent this alleged fact seeks to conclude AFI acts in accordance with its policies. AFI failed to adhere to its own policies." PODSUF ¶ 3. The Court finds that this fails to create a genuine dispute.

[3] Sullivan contends that this fact is "[d]isputed to the extent this alleged fact seeks to conclude AFI acts in accordance with its policies. AFI failed to adhere to its own policies." PODSUF ¶ 4. The Court finds that this fails to create a genuine dispute.

f. The reason for the employee's absence is other**wise protected by applicable law**.

Extended Absences (3 or more consecutive days)

> **Employees who have been absent for 3 or more consecutive workdays are required to submit documentation proving acceptable reason(s) for the absences**. Certain employee absences may be eligible for some form of Leave of Absence (LOA). Questions pertaining to LOA eligibility should be referred to the Leave Coordinator.

> **Being absent for 3 or more consecutive working days without notifying the Company in advance is an Intolerable Behavior work rule violation** and may subject the employee to disciplinary action, **up to and including termination**.

*Id.* ¶ 16 (emphasis added)[4]; PSAF ¶ 59[5]; *see also* ECF No. 46-1, at 4–6 ("AFI Attendance Policy"). Sullivan acknowledged receipt of the AFI Attendance Policy. DSUF ¶ 17. AFI's attendance line number was (909) 654-3051, the same number Sullivan called each time he needed time off from work. PSAF ¶ 56.[6]

On March 6, 2020, Sullivan was the victim of an unprovoked physical attack outside of work resulting in disabling injuries, including a concussion with lingering symptoms such as migraines,

---

[4] AFI's SUF proposed the following fact:

The Company's attendance policy the policy states as follows:

Being absent for 3 or more consecutive working days without notifying the Company in advance is an Intolerable Behavior work rule violation and may subject the employee to disciplinary action, up to and including termination.

DSUF ¶ 16. Sullivan argued that this fact is disputed, noting that the language quoted was only "a limited portion of the policy, intentionally omitting portions where AFI required doctor's notes to be provided only upon an employee's return to work after leave." PODSUF ¶ 16. Because the Court finds additional portions of the attendance policy to be relevant, the Court have adjusted the language to include said relevant portions.
[5] Sullivan's SAF proposed the following fact: "AFI's Disciplinary Procedure regarding attendance requires progressive discipline consisting of a written and final warning prior to termination." PSAF ¶ 59. AFI contends that this proposed fact is disputed, asserting: "Incomplete recital of facts. The evidence does not support this contention. Plaintiff fails to cite to any admissible evidence. The evidence Plaintiff cites to is hearsay. Irrelevant and immaterial. The decision to terminate Plaintiff was because he failed to show up for work and failed to call the attendance line on five separate occasions. Further, Plaintiff never gave AFI a doctor's note." DOPSAF ¶ 56. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.
[6] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

1    tinnitus, nausea, lightheadedness, and fainting spells, requiring doctor visits and a short leave from

2    work as indicated by his medical provider. PSAF ¶ 49.[7]

3        Sullivan called out of work using AFI's attendance line on March 8 and 9, 2020. *Id.* ¶ 35.[8]

4    After taking a few days off due to the March 6, 2020 injury, Sullivan attempted to return to work on

5    March 14 or 15, 2020, but after about two hours, his health declined and he was forced to leave work

6    to seek medical attention. *Id.* ¶ 36.[9] That day, Sullivan notified AFI, through supervisor Christian

7    Martinez, that he was feeling unwell. *Id.* ¶ 37.[10] On March 18 and 19, 2020, Sullivan called AFI's

8    attendance line and indicated he would provide a doctor's note. *Id.* ¶ 18; ECF No. 45-1, at 16–19.[11]

9        On March 27, 2020, Sullivan exchanged text messages with a supervisor, Victor Castaneda

10   ("Castaneda"), wherein Sullivan informed Castaneda that he had a doctor's note covering him

11   through March 30, 2020. DSUF ¶ 20. Castaneda suggested that Sullivan bring in the doctor's note at

12   the conclusion of his medical absence. *Id.* ¶ 21[12]; Castaneda Decl. ¶ 11.[13] According to Sullivan's

13   doctor's note, signed on April 2, 2022, Sullivan was qualified to perform the essential functions of

---

[7] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[8] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[9] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[10] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[11] Sullivan concedes that this it is "[u]ndisputed that AFI's documentation reflects such," but asserts that the proposed fact is "[d]isputed to the extent this alleged fact seeks to conclude the entirety of Plaintiff's communication via the attendance line." PODSUF ¶ 18. The Court finds that the additional information offered by Sullivan does not create a genuine dispute as to the proposed fact.

[12] AFI's SUF proposed the following fact: "Castaneda told Plaintiff to bring in the doctor's note." DSUF ¶ 21. In his declaration, Sullivan's supervisor, Victor Castaneda clarified that he meant that Sullivan should bring in his doctor's note at the conclusion of his medical absence. ECF No. 48 ("Castaneda Decl.") ¶ 11. The Court has adjusted this language to provide further clarity.

[13] Although the Court need not "comb the record" looking for other evidence, it must nonetheless consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. FED. R. CIV. P. 56(c)(3); *Carmen*, 237 F.3d at 1029. As a result, the Court considered the contents of the declaration of Victor Castaneda in consider the pending Motion for Summary Judgment. Despite AFI's insistence during the hearing on the Ex Parte Motion to Shorten Time for Hearing on Motion to Strike, the Court finds that Castaneda's declaration gives rise to genuine issues of material fact, as discussed in the sections below.

his job with the reasonable accommodation of a leave of absence. PSAF ¶ 33.[14] Castaneda observed that Martinez was "overzealous" in his discipline of employees and appeared to get upset when employees needed time off from work, regardless of the reason for the absence. *Id.* ¶ 42.[15]

On March 30, 2020, Sullivan did not return to work, nor did he provide AFI with copies of his doctor's note. DSUF ¶ 22.[16] However, on that day, he called the AFI attendance line. PSAF ¶ 39; ECF No. 45-1, at 16–19.[17] On March 31, April 1, 2, 5, and 6, Sullivan did not call the attendance line or show up to work. DSUF ¶ 23.[18] Sullivan never gave AFI doctor's notes placing him off work.

---

[14] Sullivan's SAF proposed the following fact: "Plaintiff was qualified to perform the essential functions of his job with the reasonable accommodation of a leave of absence." PSAF ¶ 33. The Court finds that whether Sullivan was actually qualified to perform the essential functions of his job is not necessarily an undisputed fact; however, it has adjusted the language of this proposed fact such that information presented is not subject to dispute—namely, the Court finds the contents of the doctor's note to be undisputed. AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[15] Sullivan's SAF proposed the following fact: "Supervisor Christian Martinez routinely targeted employees who needed time off from work, regardless of the reason for the absence, including Plaintiff." The Court finds that whether Martinez "targeted employees" is subject to dispute and, as a result, adjusts the language accordingly.

[16] Sullivan contends that this proposed fact is disputed, asserting that he "followed AFI's attendance policy by calling the attendance line on March 30, 2020" and left a message stating that his ongoing medical symptoms prevented him from being able to report to work, that he would be out until further notice, and that he would provide a doctor's note upon his return. PODSUF ¶ 22. The Court finds that this additional information does not create a genuine dispute as to the proposed fact.

[17] Sullivan's SAF proposed the following fact: "After Plaintiff informed Defendant that he would be out due to his disabling condition until further notice on March 30, 2020, AFI never initiated contact with Plaintiff for any reason, directly contradicting the claim to the contrary by Sonia Castro that she called Mr. Sullivan on April 6, 2020." PSAF ¶ 39. However, the Court finds that whether AFI contacted Sullivan following March 30, 2020—and particularly whether HR Manager Sonia Castro called Sullivan on April 6, 2020, is a genuinely disputed fact. As a result, the Court has adjusted the language to present only undisputed facts. The Court also finds the contents of his message to pose a genuine dispute of material fact.

[18] Sullivan contends that this proposed fact is disputed, asserting that he "followed AFI's attendance policy by calling the attendance line on March 30, 2020" and left a message stating that his ongoing medical symptoms prevented him from being able to report to work, that he would be out until further notice, and that he would provide a doctor's note upon his return. PODSUF ¶ 23. The Court finds that this additional information does not create a genuine dispute as to the proposed fact.

*Id.* ¶ 26.[19] Sullivan never received a written or final warning regarding his absences prior to his termination. PSAF ¶ 34.[20]

After an employee does not call the attendance line a number of days in a row, it is Human Resources Manager Sonia Castro's ("Castro") responsibility to then "contact him via my phone, call him and leave him a voice mail and try to reach him." *Id.* ¶ 57.[21] Castro did not need permission to fire Sullivan and terminated him based on her own initiative and interpretation of AFI's policies. *Id.* ¶ 50.[22] Neither Castro, nor anyone at AFI, conducted a formal investigation into whether Sullivan had a valid doctor's note or asked Sullivan to bring in medical documentation. *Id.* ¶ 51.[23] Castro noted in an email to other AFI personnel that she could only reach out to Sullivan after three consecutive days of no call, no shows. *Id.* ¶ 58.[24] Castro was aware, as of March 31, 2020, that Sullivan had called out on March 30, 2020, noting that he had a doctor's note. *Id.* ¶ 52.[25]

On April 8, 2020, AFI terminated Sullivan's employment. DSUF ¶ 24.[26] Castro stated that the reason for the termination was violation of AFI's attendance policy, which prohibited absences

---

[19] Sullivan contends that this proposed fact is disputed, noting that AFI's attendance policy allowed employees to provide medical documentation in support of absences upon their return to work but that AFI failed to provide him with the opportunity to do so before terminating him. PODSUF ¶ 26. The Court finds that this additional information does not create a genuine dispute as to the proposed fact.

[20] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[21] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[22] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[23] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[24] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[25] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[26] AFI's SUF proposed the following fact: "Plaintiff's employment was terminated on April 8, 2020 for violation of the Company's attendance policy, wherein he was absent more than three (3) consecutive days

1   of more than three consecutive days without notification. *Id.*[27]  Sullivan's final paycheck was sent to

2   the address that AFI had on file. DSUF ¶ 25.[28]

3          On April 16, 2020, Sullivan text messaged Castro with hopes of discussing his employment

4   and his then physical limitations due to his disability. PSAF ¶ 46.[29] Sullivan was then informed for

5   the first time via text message that his employment had been terminated on April 8, 2020. *Id.* ¶ 47.[30]

6   On April 17, 2020, Sullivan texted Castro that he notified AFI on his last call to the attendance line

7   that he would be out until further notice. *Id.* ¶ 54.[31]

8   **IV.    Discussion**

9          AFI contends that the Court should grant summary judgment as to Sullivan's: (1) claim for

10  disability discrimination (Claim 1); (2) claim for retaliation (Claim 2); (3) claim for failure to

11  provide reasonable accommodation (Claim 3); (4) claim for failure to engage in the interactive

12  process (Claim 4); (5) claim for aiding and abetting (Claim 5)[32]; (6) claim for wrongful termination

13  in violation of public policy (Claim 6); (7) claim for waiting time penalties (Claim 7); and (8) prayer

14  for punitive damages. Mot. at 2. In the case before us, Sullivan has the ultimate burden of persuasion

---

without notifying the Company or calling the attendance line." DSUF ¶ 24. Sullivan contends that this fact is disputed, asserting, among other things, that Sullivan did not engage in the conduct for which he was purportedly fired—namely, being absent for more than three consecutive days without notifying the Company or calling the attendance line. In order to provide clarity as to what is undisputed, the Court adjusts the language of the proposed fact to add the word "purportedly" in order to indicate the reason AFI presents for Sullivan's termination, although whether he in fact engaged in the conduct for which he was terminated remains genuinely disputed.

[27] *See supra* n.27.

[28] Sullivan contends that this proposed fact is disputed, noting that AFI failed to provide him with his final paycheck upon termination and failed to confirm with him that the mailing address on file was correct before sending his final paycheck. PODSUF ¶ 25. The Court finds that this additional information does not create a genuine dispute as to the proposed fact.

[29] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[30] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[31] AFI contends that this proposed fact is disputed. *See supra* n.5. The Court finds this response—used by AFI in response to each of Sullivan's proposed additional facts—fails to create a genuine dispute as to this proposed fact.

[32] In Sullivan's Opposition, he notes that because Stoneledge was dismissed as a defendant, his claim for aiding and abetting should be dismissed without prejudiced as moot. Opp'n at 5. As a result, the Court will dismiss Sullivan's claim for aiding and abetting without prejudice.

1    at trial on each of his claims. In its Motion for Summary Judgment, AFI, as the moving party, has

2    the initial burden of production and ultimate burden of persuasion on its motion.

3       **A.  Genuine disputes of material fact exist with respect to Sullivan's disability**

4           **discrimination claim (Claim 1), precluding summary judgment.**

5       The Fair Employment and Housing Act (FEHA) proscribes two types of disability

6    discrimination: (1) discrimination arising from an employer's intentionally discriminatory act against

7    an employee because of his or her disability (*i.e.*, disparate treatment discrimination); and (2)

8    discrimination resulting from an employer's facially neutral practice or policy that has a

9    disproportionate effect on employees suffering from a disability (*i.e.*, disparate impact

10   discrimination). *Avila v. Continental Airlines, Inc.*, 82 Cal. Rptr. 3d 440, 448 (Ct. App. 2008). Here,

11   Sullivan appears to only assert disparate treatment discrimination. "To prevail under the disparate

12   treatment theory, an employee must show that the employer harbored a discriminatory intent."

13   *Mixon v. Fair Emp't & Housing Comm'n*, 237 Cal. Rptr. 884, 890 (Ct. App. 1987). Because "[i]n

14   most cases, the complainant will be unable to produce direct evidence of the employer's intent, . . .

15   certain rules regarding the allocation of burdens and order of presentation of proof have developed in

16   order to achieve a fair determination of 'the elusive factual question of intentional discrimination.'"

17   *Id.*[33]

18       Accordingly, when reviewing discrimination claims, courts apply a three-stage, burden-

19   shifting test: (1) first, the plaintiff must establish a prima facie case of discrimination; (2) second, the

20   _____

21   [33] AFI contends that because Sullivan is unable to demonstrate discriminatory animus for his termination, his
22   disability discrimination claim must fail. Opp'n at 11–12. As an initial matter, the lack of discriminatory
     animus does not preclude liability for a disability discrimination claim. *Glynn v. Superior Court*, 254 Cal.
23   Rptr. 3d 772, 778 (Ct. App. 2019) (noting that evidence that employer terminated employee because of
     mistaken but good faith belief that employee was totally disabled and unable to work was direct evidence of
24   discrimination sufficient to defeat motion for summary adjudication). To the extent that AFI meant to argue
     that Sullivan's inability to demonstrate discriminatory *intent* requires a grant of summary judgment, the Court
25   similarly rejects this argument. The California Court of Appeal has recognized that "[i]n most cases, the
     complainant will be unable to produce direct evidence of the employer's intent." *Mixon*, 237 Cal. Rptr. at 890.
26   As a result, the Supreme Court established a three-part burden-shifting test in *McDonnell Douglas Corp. v.
     Green* to assist courts in determining "the elusive factual question of intentional discrimination." *Id.* (citing
27   *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Therefore, the question of whether
     discriminatory intent exists is folded into the *McDonnel Douglas* analysis that follows below. As discussed
28   below, a genuine dispute of material fact exists with respect to Sullivan's disability discrimination claim—
     and in particular with whether AFI harbored a discriminatory intent in terminating Sullivan.

employer has the opportunity to rebut this prima facie case by offering legitimate reasons for its actions; and (3) third, the plaintiff then has an opportunity to demonstrate that the employer's proffered reason is mere pretext. *McDonnell Douglas*, 411 U.S. at 802–05. In order to prevail on summary judgment, AFI must show either that: (1) Sullivan could not establish one of the elements of a FEHA claim; or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate Sullivan's employment. *See Avila*, 82 Cal. Rptr. 3d at 449.

AFI contends that Sullivan's discrimination claim fails as a matter of law because: (1) Sullivan cannot make a prima facie case for disability discrimination; (2) AFI had a legitimate reason for his termination; and (3) there is no evidence that AFI's legitimate reason for the termination was false or pretextual. Mot. at 9–14. Sullivan argues that: (1) he is able to establish a prima facie case of disability discrimination; and (2) there is sufficient evidence to show that AFI's reasons for terminating Sullivan are pretextual and illegitimate. Opp'n at 5–15.

> i. Whether Sullivan can make a prima facie case for disability discrimination is a question for resolution by the jury because whether AFI was aware of his disability—and therefore whether he was subjected to an adverse employment action because of his disability—is in genuine dispute.

To establish a prima facie case for disability discrimination, a plaintiff must demonstrate: (1) he suffers from a disability; (2) he is otherwise qualified to do his job; and (3) he was subjected to an adverse employment action because of his disability. *Faust v. Cal. Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Ct. App. 2007). In its Motion, AFI does not appear to contest that Sullivan suffers from a disability, is otherwise qualified to do his job, or that he was subjected to an adverse employment action[34]; rather, AFI's main contention is that Sullivan cannot show that AFI was aware

---

[34] Here, the adverse employment action in question is Sullivan's April 8, 2020 termination. Sullivan, in his Opposition, references a separate occasion in August 2019 during which he allegedly experienced discrimination on the basis of disability when AFI denied his request for reasonable accommodations. Opp'n at 12, 15, 19–20. By referencing these incidents, Sullivan appears to be attempting to claim additional bases of discrimination. However, as Sullivan conceded during the hearing, no allegations regarding this August 2019 incident appear in the Complaint. Because these allegations are not properly alleged in the Complaint, the Court finds it inappropriate to consider them as part of Sullivan's claims. To the extent Sullivan wishes to add these allegations to his Complaint, he is required to take appropriate action in doing so.

of his disabling condition and therefore cannot prove that he was subject to an adverse employment action *because of* his disability. Mot. at 10–11.

> 1.   *Whether the messages that Sullivan left via AFI's attendance line put AFI on notice of Sullivan's disability is a genuine dispute of material fact.*

In order to demonstrate that an adverse employment action was made because of a disability, the plaintiff must establish that the employer had knowledge of their disability when the adverse employment decision was made. *Brundage v. Hahn*, 66 Cal. Rptr. 2d 830, 836 (Ct. App. 1997). "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts." *Id.* "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations . . . ." *Id.* (quoting *Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996)).

AFI argues that because Sullivan never provided AFI with a doctor's note placing him off work, it was not aware that Sullivan actually suffered from a disability. Mot. at 11. AFI points to Sullivan's own concessions that he never submitted a doctor's note in support of its contention. AFI has therefore met its initial burden of production by offering evidence suggesting that Sullivan lacks evidence establishing AFI's knowledge of Sullivan's disability.

The burden therefore shifts to Sullivan to demonstrate the existence of a genuine dispute of material fact. Sullivan points to a number of different ways in which he contends AFI was put on notice of his disability: (1) multiple messages left via the attendance line on March 17, 18, and 19 relaying his need for medical leave through March 30, 2020, and his need for reasonable accommodations; (2) a message left on March 30, 2020, stating that he was suffering from ongoing medical symptoms preventing him from being able to report to work, that he would be out until further notice, and that he would provide a doctor's note to that effect upon his return; (3) his direct communication of his disability to his supervisor, Christian Martinez, who physically observed and verbally commented on his disability, or perceived disability; (4) multiple text messages from Sullivan to his direct supervisor, Castaneda, wherein he stated that he had a doctor's note covering

him through March 30, 2020; and (5) Sullivan's text message to Castro on April 20, 2020, informing her that he believes he was wrongfully terminated and that Castaneda and Martinez were aware of his medical situation. Opp'n at 7–10.

Sullivan contends that AFI should have been aware of his disability because he left multiple messages via the attendance line: (1) on March 17, 18, and 19, relaying his need for medical leave through March 30, 2020, and his need for reasonable accommodations; and (2) on March 30, 2020, stating that he was suffering from ongoing medical symptoms preventing him from being able to report to work, that he would be out until further notice, and that he would provide a doctor's note to that effect upon his return. Mot. at 9–10. AFI disputes that Sullivan left a message on the attendance line requesting a leave of absence or informing them of his disability. Reply at 4.

In his declaration, Sullivan states that he called AFI's attendance hotline on March 17, 18, 19, and 30, 2020, and that "[o]n each such occasion, I left a message communicating that I could not go in to work *due to my disabling condition*, my need for time off as an accommodation, and that I would provide a doctor's note to that effect upon my return to work." ECF No. 45 ("Sullivan Decl.") ¶ 10, 17 (emphasis added). As a result, some evidence exists suggesting that Sullivan directly informed AFI, through the attendance hotline, of his disability. AFI points to no evidence foreclosing the possibility that Sullivan communicated information regarding his disability via the attendance hotline, nor does AFI dispute that such communications would be insufficient to put AFI on notice. As a result, the Court finds that a genuine dispute of material fact exists as to whether AFI was on notice of Sullivan's disability.[35]

2. *Whether AFI fired Sullivan because of his disability is a genuine dispute of material fact.*

When the employer knows of the employee's disability, "conduct resulting from the disability is considered to be part of the disability, rather than a separate basis for termination. The

---

[35] Because the Court finds that a genuine dispute exists as to whether AFI was aware of Sullivan's disability—and therefore whether he was subjected to an adverse employment action because of his disability—it need not consider Sullivan's additional arguments, namely that AFI was aware of his disability because of his communications with Castaneda, Martinez, and Castro.

link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1140 (9th Cir. 2001). Here, Sullivan has presented sufficient evidence to create a triable issue of material fact as to whether his absenteeism was caused by his disability. As a result, a jury could reasonably find the requisite causal link between Sullivan's disability and his absenteeism and conclude that AFI fired Sullivan because of his disability.

           ii.   <u>Whether AFI has a legitimate, nondiscriminatory reason for Sullivan's termination is a genuine dispute of material fact.</u>

AFI contends that even if Sullivan is able to establish a prima facie case, no genuine dispute exists that AFI had a legitimate, nondiscriminatory reason for Sullivan's termination. Mot. at 12–13. AFI asserts that Sullivan was terminated because he violated AFI's attendance policy by failing to: (1) apply for a leave of absence that was approved by the HR department; or (2) notify the company in advance of being absent for three or more consecutive working days. *Id.*; *see also* Reply at 4–7.

           *1.   Whether Sullivan's failure to apply for and obtain an approved leave of absence is a legitimate, nondiscriminatory reason for his termination is a genuine dispute of material fact.*

With respect to Sullivan's first alleged failure to comply with the attendance policy—failure to apply for a leave of absence that was approved by the HR department—AFI quotes the attendance policy:

> **Authorization of an absence** may occur if, for example:
>    . . .
>    b. The employee **has applied for a leave of absence that has been approved by the Human Resources Department.**

AFI Attendance Policy, at 5 (emphasis added). However, according to the AFI Attendance Policy, authorization of an absence may also occur if:

>    c. The employee has **provided acceptable medical documentation** that he/she was not able to work. It is the employee's obligation to **obtain and submit any medical documentation on the day they return to work**.

*Id.* (emphasis added). Sullivan informed AFI multiple times that he had obtained a doctor's note regarding leave from work. The plain language of the policy clearly states that the employee has an obligation to submit appropriate medical documentation *on the day they return to work*. Castaneda's declaration supports this reading of AFI's policy. *See* Castaneda Decl. ¶¶ 7 (noting that "employees who had taken time off for medical reasons were expected to bring in a note *whenever they returned from such an absence*"), 11 (noting that he told Sullivan to bring in his doctor's note "at the conclusion of his medical absence per [AFI] policy"). Because Sullivan was terminated before he returned to work, he was unable to submit his medical documentation. AFI provides no evidence suggesting that this method of authorization did not apply to Sullivan. As a result, the Court finds that whether Sullivan's failure to apply and obtain approval for a leave of absence constitutes a legitimate, nondiscriminatory reason for his termination is a genuine dispute of material fact.

> 2. *Whether Sullivan failed to notify AFI in advance of his absences, and whether his termination as a result was legitimate and nondiscriminatory, are genuine disputes of material facts.*

With respect to Sullivan's second alleged failure to comply with the attendance policy—failure to notify the company in advance of his multiple consecutive absences—AFI again quotes the AFI Attendance Policy:

> **Being absent for 3 or more consecutive working days without notifying the Company in advance is an Intolerable Behavior work rule violation** and may subject the employee to disciplinary action, **up to and including termination**.

*Id.* (emphasis added). AFI, in its Reply, states that under the policy, "an employee is required to call the attendance line prior to the beginning of each shift, should they be absent." Reply at 6. However, Sullivan stated that he *did* inform AFI via its attendance line by leaving: (1) multiple messages on March 17, 18, and 19 relaying his need for medical leave through March 30, 2020, and his need for reasonable accommodations; and (2) a message on March 30, 2020, stating that he was suffering from ongoing medical symptoms preventing him from being able to report to work, that he would be out until further notice, and that he would provide a doctor's note to that effect upon his return. AFI points to no evidence foreclosing the possibility that Sullivan did so. A genuine dispute of material

fact therefore exists as to whether Sullivan failed to notify AFI in advance of his absences. As a result, such a dispute also exists as to whether his termination for this failure was legitimate and nondiscriminatory. [36]

As a result, the Court DECLINES to grant the Motion for Summary Judgment as to Sullivan's disability discrimination claim.

**B. Genuine disputes of material fact exist with respect to Sullivan's retaliation claim (Claim 2), precluding summary judgment.**

To establish a prima facie case of retaliation under the FEHA, a plaintiff is required to show: (1) that they engaged in a "protected activity"; (2) that the defendant subjected plaintiff to an adverse employment action; and (3) a causal link between the protected activity and the defendant's action. *Yanowitz v. L'Oreal USA, Inc.*, 116 P.3d 1123, 1130 (Cal. 2005). As with discrimination claims, courts generally employ the *McDonnell Douglas* burden-shifting framework when analyzing retaliation claims. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1243 (9th Cir. 2013). Sullivan contends that he "engaged in protected activities," which he defined as requesting reasonable accommodations—in this case, medical leave to accommodate his disability—and thereafter attempting to use the reasonable accommodations (*i.e.*, taking his requested medical leave). Opp'n at 16–17. AFI does not dispute that these actions are the "protected activities" in question. AFI contends that Sullivan's retaliation claim fails because the only challenged employment action in this case was taken for legitimate reasons and there is no evidence of pretext. Mot. at 14–15. However, as discussed previously, whether the reasons for which Sullivan was terminated were legitimate and non-pretextual presents a genuine dispute of material fact. AFI has not met its ultimate burden of persuasion in establishing no genuine dispute of material fact exists with respect to this element. As a result, the Court DECLINES to grant the Motion for Summary Judgment as to Sullivan's retaliation claim.

---

[36] The Court also notes that Castenada's declaration testimony that Martinez was "overzealous" in his discipline of employees and "appeared to get upset when employees needed time off from work, regardless of the employee's reason for the absence" gives rise to a genuine issue of material fact as to whether or not Sullivan was terminated for legitimate reasons. Castaneda Decl. ¶ 10.

**C. Genuine disputes of material fact exist with respect to Sullivan's reasonable accommodation claim (Claim 3) and failure to engage in the interactive process (Claim 4) claims, precluding summary judgment.**

AFI argues that Sullivan's reasonable accommodation and failure to engage in the interactive process claims fail because AFI was unaware that Sullivan needed an accommodation. Mot. at 16–18.

Under FEHA, a plaintiff bringing a claim for failure to accommodate must establish that: (1) they have a disability covered by the FEHA; (2) they are a qualified individual able to perform the essential functions of the position; and (3) the employer failed to reasonably accommodate their disability. *Cuiellette v. City of Los Angeles*, 123 Cal. Rptr. 3d 562, 568–69 (Ct. App. 2011). "The duty of an employer reasonably to accommodate an employee's [disability] does not arise until the employer is aware of [the employee's] disability and physical limitations." *Avila*, 82 Cal. Rptr. 3d at 453 (quoting *Prilliman v. United Air Lines, Inc.*, 62 Cal. Rptr. 2d 142, 149 (Ct. App. 1997)). FEHA also makes it unlawful for an employer to

> fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a **request for reasonable accommodation** by an employee or applicant **with a known physical or mental disability or known medical condition**.

CAL. GOV'T CODE § 12940 (emphasis added). As discussed previously, whether AFI was on notice of Sullivan's disability presents a genuine dispute of material fact. AFI has not met its ultimate burden of persuasion in establishing no genuine dispute of material fact exists with respect to this element. As a result, the Court DECLINES to grant the Motion for Summary Judgment as to Sullivan's reasonable accommodation and failure to engage in the interactive process claims.

**D. A genuine dispute of material fact exists with respect to Sullivan's wrongful termination claim (Claim 6), precluding summary judgment.**

AFI contends that Sullivan's claims for wrongful termination fail because it is tethered to Sullivan's failed claims under the FEHA. Mot. at 18–19. However, as discussed above, genuine disputes of material fact exist with respect to all of Sullivan's FEHA claims. Therefore, a genuine dispute of material fact also exists with respect to Sullivan's wrongful termination claim. AFI has

1    failed to meet its ultimate burden of persuasion. As a result, the Court DECLINES to grant the

2    Motion for Summary Judgment as to Sullivan's wrongful termination claim.

3
        **E.  Sullivan's waiting time penalties claim (Claim 7) fails as a matter of law.**
4

5        AFI contends that Sullivan's claim for waiting time penalties fail because AFI sent Sullivan's

6    final paycheck to the address on file and Sullivan never informed AFI of his new address. Mot. at

7    18–19. California Labor Code § 201(a) states that "[i]f an employer discharges an employee, the

8    wages earned and unpaid at the time of discharge are due and payable immediately." CAL. LAB.

9    CODE § 201(a). Labor Code § 202 requires that if an employee quits, "his or her wages shall become

10   due and payable not later than 72 hours thereafter." *Id.* § 202. Under California Labor Code § 203, if

11   an employer "willfully" fails to pay any wages of an employee who is discharged or who quits, "the

12   wages of the employee shall continue as a penalty from the due date thereof at the same rate until

13   paid or until an action therefor is commenced; but the wages shall not continue for more than 30

14   days." *Id.* § 203.

15       "The settled meaning of 'willful,' as used in section 203, is that an employer has

16   intentionally failed or refused to perform an act which was required to be done." *Amaral v. Cintas*

17   *Corp. No. 2*, 78 Cal. Rptr. 3d 572, 607 (Ct. App. 2008). AFI's records reflect that it sent Sullivan

18   his final paycheck on April 8, 2020, the same day he was terminated, to the address that AFI had on

19   file for Sullivan—indicating that AFI acted in good faith and did not "intentionally fail[] or

20   refuse[]" to provide Sullivan with his final paycheck. As a result, AFI has met its initial burden of

21   demonstrating the absence of the willfulness element under section 203.

22       The burden then shifts to Sullivan to set out specific material facts showing a genuine issue

23   for trial. Although Sullivan stated that he moved to a new address prior to his termination, Sullivan

24   does not contend that he informed anyone at AFI about his new address, nor does he assert that AFI

25   refused to pay him after he informed him of their mistake. Rather, Sullivan argues that AFI should

26   have contacted him to confirm that his address on file was correct before sending his final check.

27   Opp'n at 20–21. However, the Court finds no authority—nor does Sullivan offer any—suggesting

28

1    that AFI was obligated to do so. Nor was AFI's failure to do so indicative of a "willful" attempt to

2    avoid paying Sullivan his final paycheck.

3          During the hearing on this Motion, counsel for Sullivan conceded that AFI's failure to

4    confirm Sullivan's address prior to sending his final check did not constitute willful conduct.

5    However, counsel for Sullivan suggested that AFI's failure to inform Sullivan of his termination

6    may be construed as acting willfully. However, the Court finds this unconvincing. That AFI

7    neglected to inform Sullivan that he had been terminated has no bearing on whether or not AFI

8    willfully failed to pay his wages under CAL. LAB. CODE § 203.

9          The Court finds that no genuine dispute of material fact exists as to the willfulness element

10   of the waiting time penalties claim. The Court therefore GRANTS the Motion for Summary

11   Judgment as to Sullivan's waiting time penalties claim.

12             **F.  Because AFI failed to carry its initial burden of production to make a prima**
13                 **facie showing that Castro was not its managing agent, Sullivan's punitive**
                   **damages request must survive.**
14

15         Lastly, AFI contends that Sullivan's request for punitive damages fails as a matter of law

16   because there is no evidence that an officer, director, or managing agent of AFI engaged in an act of

17   malice, oppression, or fraud against Sullivan. Mot. at 19–20. Under California Civil Code § 3294, a

18   plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the

19   defendant has been guilty of oppression, fraud, or malice." CAL. CIV. CODE § 3294(a). However,

20   "[w]ith respect to a corporate employer, the advance knowledge and conscious disregard,

21   authorization, ratification, or act of oppression, fraud, or malice must be on the part of an officer,

22   director, or managing agent of the corporation." *Id.* § 3294(b). The ability to hire and fire employees

23   does not automatically render a supervisory employee a managing agent under § 3294. *White v.*

24   *Ultramar, Inc.*, 981 P.2d 944, 947 (Cal. 1999). Rather, "managing agent" refers to "only those

25   corporate employees who exercise substantial independent authority and judgment in their corporate

26   decisionmaking so that their decisions ultimately determine corporate policy." *Id.* The scope of a

27   corporate employee's discretion and authority under this test is a question of fact for decision on a

28   case-by-case basis. *Id.*

Here, Sullivan contends that Castro, AFI's Human Resources Manager responsible for terminating his employment, falls into the category of a managing agent of the corporation. Opp'n at 21–25. In moving for summary judgment on the punitive damages issue, AFI has the initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. Accordingly, AFI has the initial burden to produce sufficient evidence to make a prima facie showing that there were no triable issues regarding whether Castro—or any other AFI managers or employees involved in Sullivan's termination—were managing agents of AFI. Sullivan asserts that AFI has failed to meet its initial burden to produce evidence that Castro was not a managing agent. Opp'n at 21.

AFI states in its Motion that "[n]one of the individuals alleged to have committed or known about any alleged wrongdoing are or ever have been: (a) an officer or member of the board of directors of AFI; (b) authorized to create or change corporate policies or procedures for AFI; or (c) authorized to make decisions that ultimately determine corporate policy for AFI." Mot. at 20. However, AFI does not appear to cite to any evidence supporting this seemingly conclusory assertion. In Castro's declaration, she states:

> I am **not a managing agent** of AFI or Stoneledge. I am **not authorized to create or change corporate policies or procedures** for AFI or Stoneledge. I am **not an officer or member of the board of directors of AFI or Stoneledge**. I am **not authorized to make decisions that ultimately determine corporate policy** for AFI or Stoneledge.

ECF No. 35 ("Castro Decl.") ¶ 19 (emphasis added).

However, much of the language found in this paragraph of Castro's declaration is either conclusory or merely parrots the managing agent standard established in *White*. *White*, 981 P.2d at 947; *see also Davis v. Kiewit Pac. Co.*, 162 Cal. Rptr. 3d 805, 814 (Ct. App. 2013) (concluding that defendant "cannot satisfy its initial burden of production of *evidence* by making a conclusory statement of *law*, whether directly or through a declaration of one of its employees"). As a result, AFI, "by simply restating the applicable legal standard under *White* for the determination of whether [Castro] was its managing agent, did not satisfy its initial burden of production." *Davis*, 162 Cal. Rptr. 3d at 814.

Moreover, to the extent that AFI relies on Castro's non-legal statement that she is not authorized to change corporate policies or procedures for AFI, this single statement is insufficient to satisfy AFI's initial burden of production to make a prima facie showing that Castro was not a managing agent. Castro's declaration is devoid of any description of her job duties, responsibilities, and the nature and extent of her authority and discretion as Human Resources Manager at AFI, as well as her exercise of that authority and discretion, to support a reasonable inference that she did not "make decisions that ultimately determine corporate policy." As a result, the Court concludes that AFI failed to carry its initial burden of production to make a prima facie showing that Castro was not its managing agent. The Court therefore DENIES the Motion for Summary Judgment as to the punitive damages request.

**V.     Conclusion**

For the foregoing reasons, the Court hereby ORDERS as follows:

1. The Motion for Summary Judgment is DENIED with respect to Sullivan's claims for disability discrimination (Claim 1); retaliation (Claim 2); failure to provide reasonable accommodation (Claim 3); failure to engage in the interactive process (Claim 4); wrongful termination in violation of public policy (Claim 6); and request for punitive damages;

2. The Motion for Summary Judgment is GRANTED with respect to Sullivan's claim for waiting time penalties (Claim 7); and

3. Sullivan's claim for aiding and abetting (Claim 5) is hereby DISMISSED AS MOOT without prejudice.


IT IS SO ORDERED.


Dated: October 13, 2022

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge